**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MAR 1 5 2005

MATTHEW J. DYKMAN
CLERK

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                             Cr. No. 03-766 JP

VERONICA CUEVAS, SABRINA CAGE,
and SHAWNA CUEVAS,

     Defendants.

## MEMORANDUM OPINION

On December 17, 2004, I sentenced Defendant Veronica Cuevas under United States

Sentencing Guidelines (hereinafter "guideline sentence") to 46 months of imprisonment and

three years of supervised release, and I imposed an alternative sentence of 24 months of

imprisonment with the same term of supervised release.  On September 2, 2004, I sentenced

Defendant Sabrina Cage to a guideline sentence of 46 months of imprisonment and three years of

supervised release, and I imposed an alternative sentence of six days (time served) and three

years of supervised release.  On August 26, 2004, I sentenced Defendant Shawna Cuevas to a

guideline sentence of 24 months of imprisonment and three years of supervised release, and I

imposed an alternative sentence of three years probation with a condition that Defendant Shawna

Cuevas spend six months in community confinement.  I imposed the alternative sentences

because, as of the dates of the sentencing hearings, there existed considerable uncertainty about

the constitutionality of the Sentencing Reform Act of 1984 and its accompanying United States

Sentencing Guidelines.  *See Blakely v. Washington*, 124 S.Ct. 2531 (2004).

On January 12, 2005, Defendant Sabrina Cage filed a Motion to Apply Alternative



Sentence (Doc. No. 599). On January 14, 2005, Defendant Shawna Cuevas also filed a Motion to Apply Alternative Sentence (Doc. No. 602). On January 15, 2005, Defendant Veronica Cuevas filed a Motion to Impose Alternative Sentence (Doc. No. 601). On February 24, 2005, a hearing was held these motions. Present at the hearing were Assistant United States Attorney James Braun, attorney Douglas Couleur and his client Veronica Cuevas, attorney Bob Gorence and his client Sabrina Cage, and attorney Kirtan Khalsa and her client Shawna Cuevas. After considering the briefs, relevant law, and oral arguments by counsel, I granted the motions to apply the alternative sentences that I previously had ordered and imposed. Consequently, on February 24, 2005, I entered an Order Directing Bureau of Prisons to Apply Alternative Sentence and to Immediately Release Defendant Shawna Cuevas from Custody (Doc. No. 624), and an Order Directing Bureau of Prisons to Apply Alternative Sentence and to Immediately Release Defendant Sabrina Cage from Custody (Doc. No. 626). On February 25, 2005, I entered an Order Directing Bureau of Prisons to Apply Alternative Sentence as to Veronica Cuevas (Doc. No. 630). This Memorandum Opinion explains why I entered these orders applying the previously imposed alternative sentences to Defendants Veronica Cuevas, Sabrina Cage, and Shawna Cuevas.

## A. Background

On April 22, 2003, a grand jury of the United States District Court for the District of New Mexico returned a thirty-five count indictment charging eighteen defendants with conspiracy to possess with the intent to distribute methamphetamine during the period from September 2002 to

2

April 23, 2003, and other offenses.[1]   Eight family members comprised the core of the criminal enterprise. They included Jose Luis Farias-Blanco, a citizen of the Republic of Mexico, who resided in Southgate, California, and his stepson, Eduardo Ortega, a United States citizen, who also resided in Southgate, California. Jose Luis Farias-Blanco and Eduardo Ortega were the main sources of supply of methamphetamine to members of the Cuevas family for distribution in the San Juan County, New Mexico area. Defendant Nelida Cuevas, a citizen of the Republic of Mexico, who resided in Kirtland, New Mexico, is the matriarch of the Cuevas family members who were the primary distributors of methamphetamine in San Juan County, New Mexico. Nelida Cuevas is a sister-in-law of Defendant Jose Luis Farias-Blanco, who is married to Nelida Cuevas' sister, Rita Ortega. Nelida Cuevas is the aunt of Eduardo Ortega, Rita Ortega's son by a first marriage. Nelida Cuevas had six sons and a daughter. One son, Jaime, was killed in a gang-related shooting in 1991. Four of Nelida Cuevas' sons, Arturo Cuevas, Francisco Cuevas, Ricardo Cuevas and Jorge Cuevas, were extensively involved in the family methamphetamine operations. Defendant Veronica Cuevas, Nelida Cuevas' youngest child and only daughter, also participated in the family methamphetamine business. Defendant Shawna Cuevas, who is married to Defendant Arturo Cuevas, became involved as a peripheral participant in the family methamphetamine scheme by reason of the influence of her husband, Arturo Cuevas, and his mother and siblings. Defendant Sabrina Cage had a long-term relationship with Defendant

---

[1]On February 10, 2004, the Government filed a thirty-six count superseding indictment (Doc. No. 381) against seven defendants. Those counts alleged conspiracy, possession with intent to distribute methamphetamine, aiding and abetting, carrying a firearm during and in relation to a drug trafficking crime, possessing a firearm in furtherance of a drug trafficking crime, use of a telephone to facilitate the conspiracy, and criminal forfeiture.

Ricardo Cuevas, who is the father of their young child, and Sabrina Cage became involved in the Cuevas family criminal enterprise through the influence of Ricardo Cuevas and his mother and siblings. Defendants Shawn Brooks, Crystal Brooks, Jeremy Horton, William Farrell, Dennis Coon, Sydney Scott Valencia and Jeanna Valencia in essence served as distributors, in varying degrees of activity, for the Cuevas family methamphetamine enterprise.

The government voluntarily dismissed the indictment as to Defendant Alfonso Tarwater, Sr. The other seventeen defendants entered pleas of guilty to various charges.

## B. The Sentences of the Seventeen Defendants

In studying the factual information in the presentence investigation reports of the seventeen convicted defendants, I developed the following general impressions:

1.    The male defendants were the prime movers in the methamphetamine organization.

2.    All of the male defendants had been involved in prior criminal activity, which often included weapons and violence; whereas, as a group the female defendants had not engaged in prior criminal misconduct and did not have histories of violence.

3.    Although the female defendants, when committing the offenses to which they pled guilty in this case, were not acting under duress that would establish a complete defense to the charges brought against them and they did not commit the offenses by reason of coercion or duress of a nature that would justify a downward departure under U.S.S.G. § 5K2.12, the female defendants' involvement was strongly influenced by their siblings, husband or boyfriend, and

4

it is highly unlikely that any of the female defendants, other than Nelida Cuevas, would have committed the offenses to which they pled guilty but for the influence of the men in their lives.

4.    In view of their backgrounds, including their education, work history, and family responsibilities, as well as their commendable post-conviction rehabilitation and conduct, it appears unlikely that the female defendants, other than Nelida Cuevas, will re-offend in the future, now that they are largely free of the influence of the men who involved them in the criminal enterprise.  On the other hand, the Court is much more pessimistic about recidivism by the male defendants, individually and as a group.

After considering information about each defendant, individually, and after comparing each defendant to the others, and after considering all of the factors set forth in 18 U.S.C. §3553(a), I have determined that the alternative, non-guideline sentences previously imposed on Defendants Veronica Cuevas, Sabrina Cage and Shawna Cuevas are fair, just and appropriate and are the sentences that they should serve.

The following is a list of the defendants set forth in the order of the length of sentence of imprisonment imposed on each beginning with the longest sentence and continuing through the shortest sentence.

**180 months, Arturo Cuevas.**  Arturo Cuevas pled guilty to a charge of conspiracy to possess with the intent to distribute methamphetamine.  I imposed a sentence of 180 months in accordance with the parties' agreement made under FED. R. CRIM. P. 11(c)(1)(C).  According to the presentence investigation report (paragraph 216),

5

if Defendant Arturo Cuevas had been convicted at trial on all charges in the superseding indictment his total offense level without adjustments would have been 42, his criminal history category would have been III, and his guideline imprisonment range would have been 360 months to life imprisonment. Defendant Arturo Cuevas has a long criminal history involving controlled substances and weapons. In addition, his criminal history reflects acts of violence. A 1999 criminal information charged assault against a household member (presentence investigation report, paragraph 186) and a 2001 criminal information charged aggravated assault with a deadly weapon (presentence investigation report, paragraph 187).

**180 months, Ricardo Cuevas**. Defendant Ricardo Cuevas pled guilty to a charge of conspiracy to possess with intent to distribute methamphetamine, two counts of possession with intent to distribute methamphetamine, one count of use of a telephone to facilitate a drug trafficking offense, and a count charging possession of a firearm in the furtherance of a drug trafficking crime. I imposed the 180 month total sentence agreed to by the parties under FED. R. CRIM. P. 11(c)(1)(C); this included a 120 month sentence for the drug offenses, and a 60 month consecutive sentence for the firearm offense. Although Ricardo Cuevas' criminal history is not as extensive as that of his brother, Arturo Cuevas, it included a conviction of violence (battery against a household member).

**150 months, Jose Luis Farias-Blanco**. Jose Luis Farias-Blanco pled guilty to a charge of conspiracy to possess with intent to distribute methamphetamine. I imposed the sentence of 150 months agreed to by the parties under FED. R. CRIM. P. 11(c)(1)(C). Defendant Farias-Blanco is forty-six years of age and will be close to sixty years old

6

when he completes service of his sentence, following which he will be deported to the Republic of Mexico. According to the presentence investigation report (paragraph 273) if Defendant Farias-Blanco had been convicted of all charges at trial, his total offense level would have been 40, his criminal history category would have been II, and his guideline imprisonment range would have been 324 to 405 months. Mr. Farias-Blanco has a criminal history that includes convictions of a firearm offense and a drug importation offense as well as other charges of firearm offenses. Mr. Farias-Blanco, along with his stepson, Eduardo Ortega, were the main suppliers of the methamphetamine in this case.

**135 months, Shawn Brooks**. Defendant Shawn Brooks pled guilty to two counts of distribution of methamphetamine and a count of use of a telephone to facilitate a drug trafficking offense. The government dismissed nine other counts charging Mr. Brooks with felony offenses. Under the plea agreement, Mr. Brooks had a total offense level of 31, a criminal history category of III, and a guideline sentence range of 135 to168 months for the distribution counts and a guideline sentence of 48 months for the telephone count. I imposed a sentence of 135 months imprisonment under United States Sentencing Guidelines. If Mr. Brooks had been convicted of all the charges at trial, the total offense level would have been 34, his criminal history category would have been III, and his guideline imprisonment range for the distribution and telephone charges would have been 188 to 235 months while the guideline imprisonment range for the conspiracy charge would have been 120 months to life imprisonment. At a young age, Mr. Brooks had an extensive criminal history that included multiple violent offenses. Mr. Brooks was first arrested when he was ten years old for criminal damage to property and criminal trespass.

7

When Mr. Brooks was sixteen years old, he admitted to aggravated battery with a deadly weapon, possession of under one ounce of marijuana, criminal damage to property, and unlawful taking of a motor vehicle. At the age of seventeen, Mr. Brooks was convicted of burglary of a dwelling and was reported to have been involved in an aggravated battery at the New Mexico Boys School. Mr. Brooks was also convicted of aggravated battery and escape from the custody of the Children, Youth and Families Department when he was eighteen years old. At the age of twenty, Mr. Brooks pled guilty to auto burglary. Finally, Mr. Brooks pled guilty to battery against a household member when he was twenty-two years old.

**120 months, Eduardo Ortega.** Defendant Eduardo Ortega pled guilty to a charge of conspiracy to possess with the intent to distribute methamphetamine. Mr. Ortega and the government had agreed under FED. R. CRIM. P. 11(c)(1)(C) to a 120 month sentence of imprisonment. At prior sentencing hearings, Mr. Ortega took the position that his defense counsel[2] had not provided all the information he needed to make an intelligent agreement regarding the Rule 11(c)(1)(C) sentence. Consequently, at a sentencing hearing on January 6, 2005, I refused to accept the parties' Rule 11(c)(1)(C) agreement. Later, Mr. Ortega entered a plea of guilty to the charge of conspiracy to possess with the intent to distribute methamphetamine and the charge of use of a

---

[2]The Court initially appointed Armando Torres to represent Eduardo Ortega. However, on June 27, 2003, Armando Torres withdrew as Mr. Ortega's attorney when Mr. Ortega retained attorney David Serna. On September 1, 2004, David Serna withdrew as Mr. Ortega's attorney after Mr. Ortega discharged him and the Court reappointed Armando Torres to represent Mr. Ortega.

telephone to facilitate a drug trafficking offense. His guideline sentence range was 210 to 262 months under the plea agreement. After considering all available information. I imposed a sentence of 120 months, the term of imprisonment that originally had been agreed to by the government and Mr. Ortega. If Mr. Ortega had been convicted at trial, his total offense level would have been 40, his criminal history category would have been I, and his guideline imprisonment range would have been 292 to 365 months. Eduardo Ortega and his stepfather, Jose Luis Farias-Blanco, were the main suppliers of the methamphetamine involved in this case. Defendant Eduardo Ortega has a criminal history that began at the age of seventeen and includes firearm and weapons offenses and an assault with a deadly weapon.

**96 months, Jorge Cuevas**. Defendant Jorge Cuevas pled guilty to a charge of conspiracy to possess with the intent to distribute methamphetamine and to a charge of possession of a firearm in the furtherance of a drug trafficking crime. I imposed a total sentence of 96 months to which the parties agreed under FED. R. CRIM. P. 11(c)(1)(C). Since 1991, Jorge Cuevas has been paraplegic as a result of a gang-related shooting in which his brother, Jaime Cuevas, was killed. According to the presentence investigation report (paragraph 223), if Jorge Cuevas had been convicted at trial of the conspiracy charge, his guideline imprisonment range would have been 235 to 293 months and if he had been convicted of the firearm offense, a mandatory sentence of 60 months would have been imposed to run consecutively to the drug offense for a total guideline imprisonment range of 295 to 353 months. Jorge Cuevas has a long criminal history that began at age sixteen when he was arrested for grand theft. At age seventeen, Jorge

9

Cuevas was arrested for vandalism and possession of a narcotic. Jorge Cuevas had also been arrested for being an unlicensed driver, failure to stop at a red signal, driving with a suspended license (twice), and obstructing driver view. Jorge Cuevas pled guilty to another charge of being an unlicensed driver, and to having animals at large.

**48 months, Francisco Javier Cuevas**. Defendant Francisco Javier Cuevas was charged in Count I of the indictment with conspiracy to possess with the intent to distribute methamphetamine and in Count VIII of the indictment with use of a telephone to facilitate a drug trafficking offense. Under a plea agreement with the government, Francisco Javier Cuevas entered a plea of guilty to the charge in Count VIII and the government dismissed the charge in Count I. I imposed the guideline sentence of 48 months (U.S.S.G. § 5G1.1) which was the maximum sentence under the statute of conviction. If Francisco Javier Cuevas had been convicted at trial of the charges in the indictment, his total offense level would have been 38, his criminal history category would have been VI and his guideline imprisonment range would have been 360 months to life imprisonment. Defendant Francisco Javier Cuevas has an extensive criminal history that includes multiple firearms and weapons offenses, a conviction for a crime of violence, and an arrest for murder.

**46 months, Jeremy Horton**. Defendant Jeremy Horton was charged in the indictment with conspiracy to possess with the intent to distribute methamphetamine and with one count of distribution of 50 grams or more of methamphetamine. Under a plea agreement with the government, Jeremy Horton entered a plea of guilty to a charge in a superseding information of distribution of 5 grams or more of methamphetamine and the

10

government dismissed the charges in the indictment as to Jeremy Horton. If Jeremy

Horton had been convicted at trial of the charge in the superseding information, to which

he entered a plea of guilty, the total offense level would have been 30, the criminal

history category would have been II, and the guideline imprisonment range would have

been 108 to 135 months. However, under the plea agreement, the government agreed to

adjustments to Jeremy Horton's offense level that resulted in a total offense level of 23

which, with his criminal history category of I, produced a guideline imprisonment range

of 46 to 57 months. I imposed a sentence of 46 months imprisonment under United

States Sentencing Guidelines. Jeremy Horton has a long criminal history beginning at the

age of fourteen. His criminal history includes drug charges, multiple charges of battery

and violence, and weapons offenses. For reasons not well explained in the presentence

investigation report, many of the charges were dismissed *nolle prosequi* and did not result

in criminal history points.

**37 months, Nelida Cuevas.** Defendant Nelida Cuevas entered a plea of guilty to

the charge of conspiracy to possess with intent to distribute methamphetamine.

According to the presentence investigation report (paragraph 205), if Nelida Cuevas had

been convicted of this charge at trial, her total offense level would have been 38, her

criminal history category would have been I, and her guideline imprisonment range

would have been 235 to 293 months. However, in a plea agreement the government

agreed to multiple adjustments that reduced Nelida Cuevas' total offense level to 21,

resulting in a guideline imprisonment range of 37 to 46 months. I imposed a sentence of

37 months imprisonment under United States Sentencing Guidelines. Nelida Cuevas was

11

fifty-nine years of age when she was sentenced and will be over sixty years of age by the time she completes her sentence of 37 months, after which she will be deported to the Republic of Mexico. Nelida Cuevas had no known criminal history. Because of her position as matriarch of the Cuevas criminal family, a more lengthy sentence could have been justified. However, because of her age, ill health and prospect of deportation, I determined that the sentence of 37 months was appropriate.

**27 months, Dennis Coon.** Defendant Dennis Coon was charged in four counts of a superseding indictment and entered a plea of guilty to a count charging use of a telephone to facilitate a drug trafficking offense. Under a plea agreement, the government agreed to dismiss the count of conspiracy to possess with intent to distribute methamphetamine and two counts of use of a telephone to facilitate a drug trafficking offense. If Dennis Coon had been convicted at trial of all charges in the indictment, his guideline imprisonment range would have been 120 months to life imprisonment. However, under the terms of the plea agreement, Dennis Coon received adjustments resulting in a total offense level of 17, which with his criminal history category of II, produced a guideline imprisonment range of 27 to 33 months. I imposed a sentence of 27 months imprisonment under United States Sentencing Guidelines. Mr. Coon's criminal history reflects several convictions and many arrests and charges of several violent offenses, including two charges of aggravated battery and use of a deadly weapon.

**24 months, William Farrell.** Defendant William Farrell was charged with one count of conspiracy to possess with the intent to distribute methamphetamine and two counts of use of a telephone to facilitate a drug trafficking offense. Under a plea

agreement, he entered a plea of guilty to a charge of use of a telephone to facilitate a drug

trafficking offense and the government agreed to dismiss the conspiracy count and the

other use of a telephone count. If William Farrell had been convicted at trial of all

charges in the indictment, his guideline imprisonment range would have been 120 months

to life imprisonment. However, under the terms of the plea agreement, the government

agreed to adjustments that resulted in a total offense level was 17, which with the

criminal history of 1 produced a guideline imprisonment range of 24 to 30 months. I

imposed a sentence of 24 months imprisonment under United States Sentencing

Guidelines. Although William Farrell had only one criminal history point because of a

conviction of driving under the influence of alcohol/drugs, he had other encounters with

the criminal justice system which included arrests that involved aggravated battery and

aggravated assault.

**24 months, Crystal Brooks**. Defendant Crystal Brooks was charged with one count of

conspiracy to possess with intent to distribute methamphetamine and one count of use of a

telephone to facilitate a drug trafficking crime. Crystal Brooks pled guilty to the count of use of

telephone to facilitate a drug trafficking offense and the government agreed to dismiss the

conspiracy charge. If Defendant Crystal Brooks had been convicted of the conspiracy charge at

trial, she would have faced a sentence of 120 months to life imprisonment. If Crystal Brooks had

been convicted of the charge of use of a telephone to facilitate a drug trafficking offense at trial,

her total offense level would have been 26, her criminal history category would have been 1, and

her guideline imprisonment range would have been 63 to 78 months. Under the terms of her plea

agreement, the government agreed to adjustments to her offense level that resulted in a total

13

offense level of 17 which produced a guideline imprisonment range of 24 to 30 months. I imposed a sentence of 24 months imprisonment under United States Sentencing Guidelines. Crystal Brooks completed the tenth grade in high school. Her work history indicates that she has had sporadic employment in minimum wage positions. Although she began drinking alcohol at the age of fourteen and had used marijuana periodically, after her arrest in this case a substance abuse evaluator determined that she did not have a substance abuse-related disorder and that she did not need treatment or counseling for substance abuse. Crystal Brooks had no criminal history and there is no information in the presentence investigation report that she ever acted in a violent manner.

**24 months (alternative sentence), Veronica Cuevas**. Defendant Veronica Cuevas was charged in the indictment with one count of conspiracy to possess with the intent to distribute methamphetamine, one count of possession with intent to distribute methamphetamine and six counts of use of a telephone to facilitate a drug trafficking offense. Veronica Cuevas pled guilty to the charge of conspiracy, to the charge of possession with intent to distribute, and to one count of use of a telephone. If Veronica Cuevas had been convicted at trial of all charges, her total offense level would have been 38, her criminal history category I, and her guideline imprisonment range would have been 235 to 293 months. Under the terms of the plea agreement, the government agreed to adjustments to Veronica Cuevas' offense levels that resulted in a total offense level of 23 which produced a guideline imprisonment range of 46 to 57 months. I imposed a sentence under the guidelines (which at the time of sentencing I understood were mandatory) of 46 months imprisonment and an alternative sentence under the statutes of

14

conviction, independent of the guidelines, of 24 months imprisonment. Veronica Cuevas had no criminal history and in the sentencing recommendation to the Court the probation officer stated. "To the Defendant's credit, this is her first known contact with law enforcement. There is no indication she has any criminal history." Veronica Cuevas graduated high school in California and attended a community college for two years, but had to discontinue her college education because of full-time work. From 1994 to 2001, Veronica Cuevas was steadily employed with repeated advancements in positions. While in a pretrial residential program at La Pasada Halfway House in Albuquerque, Veronica Cuevas likewise worked steadily. After release from the Albuquerque halfway house, Veronica Cuevas returned to California and has been steadily employed in a responsible position and is well liked and respected by her employer which values her as a good employee. Veronica Cuevas has a history of responsibility and hard work beginning at the age of fifteen when her father left the family home and her mother, Defendant Nelida Cuevas, acted irresponsibly. Veronica Cuevas was cared for primarily by her aunt, Rita Ortega. From the age of nine through the age of thirteen, Veronica Cuevas was sexually molested by her older brother, Luis Cuevas. Veronica Cuevas' mother paid no attention to this. In addition, Veronica Cuevas' older brothers, Jorge Cuevas and Francisco Cuevas, physically assaulted her during her youth. Nelida Cuevas always favored her sons over Veronica Cuevas, her only daughter. Consequently, when Veronica Cuevas was growing up, she was much closer to her aunt, Rita Ortega, than to her mother, Nelida Cuevas. The presentence investigation report paints a picture of Veronica Cuevas as the youngest and only female sibling in a family consisting of an irresponsible mother and

15

dominant older brothers who manipulated Veronica Cuevas while she was growing up. It is, therefore, fair to state that Veronica Cuevas was under the influence of and submissive to her older brothers and her mother. The Court is convinced that the dominance of her older brothers and mother was the main reason Veronica Cuevas got involved in the criminal activity in this case and further, that but for their lifelong manipulation of Veronica Cuevas, she would not have committed the offenses to which she pled guilty. The presentence investigation report strongly suggests that because of her determined drive to educate herself and to obtain and hold responsible jobs, after serving her 24 month sentence of imprisonment Veronica Cuevas will be a law-abiding, productive member of society now that her mother and brothers will be unable to control her life. I feel strongly that a sentence of 24 months imprisonment will satisfy all considerations of 18 U.S.C. § 3553(a) and is a sentence that is sufficient, but not greater than necessary, to provide just punishment.

**21 months, Sydney Scott Valencia.** Defendant Sydney Scott Valencia was charged with one count of conspiracy to possess with intent to distribute methamphetamine and one count of use of a telephone to facilitate a drug trafficking offense. If he had been convicted at trial of all charges, his guideline imprisonment range would have been 120 months to life imprisonment. If Sydney Scott Valencia had been convicted at trial of the use of a telephone count, his total offense level would have been 20, his criminal history category would have been II, and his guideline imprisonment range would have been 37 to 46 months. However, in the plea agreement, the government agreed to adjustments which reduced Sydney Scott Valencia's total offense

16

level to 15 resulting in a guideline imprisonment range of 21 to 27 months. I imposed a sentence of 21 months imprisonment under United States Sentencing Guidelines. Sydney Scott Valencia has three convictions for driving while intoxicated, but no other arrests or convictions. Sydney Scott Valencia is a high school graduate and had a history of employment in high-paying jobs in the oil and gas industry. The presentence investigation report reflects that Sydney Scott Valencia has no history of violent conduct.

**5 months, Jeanna Valencia.**   Defendant Jeanna Valencia was charged with one count of conspiracy to possess with intent to distribute methamphetamine and three counts of use of a telephone to facilitate a drug trafficking offense. Jeanna Valencia pled guilty to one count of use of a telephone to facilitate a drug trafficking offense. Under the terms of the plea agreement, the total offense level was 12, the criminal history category was I, and the guideline imprisonment range was 10 to 16 months. If Jeanna Valencia had been convicted of the charges at a trial, she would have had an offense level of 20 (absent any adjustments), a criminal history category of I, and a guideline imprisonment range of 33 to 41 months for the telephone charge and 120 months to life for the conspiracy charge. I imposed a guideline sentence of five months imprisonment under United States Sentencing Guidelines § 5C1.1(d)(2) with a condition of supervised release of 5 months home detention in addition to the 5 months of imprisonment. Other than an arrest for possession of marijuana and possession of drug paraphernalia when she was eighteen years old, Jeanna Valencia has no prior juvenile adjudications or adult criminal

17

convictions. Jeanna Valencia has two children and is married to Defendant Sydney Scott Valencia. The United States Probation Officer received eighteen letters describing Jeanna Valencia's good character. Moreover, Jeanna Valencia successfully completed a twelve week out patient substance abuse program and has not tested positive for drugs or alcohol. Jeanna Valencia has also been gainfully and steadily employed at least since 1996 working first as an operator for a telephone answering service and then providing daycare services from her home. A visit by a Pretrial Services Officer to Jeanna Valencia's home indicated that the home was well-kept and everything was in order.

**6 days, Sabrina Cage**. Defendant Sabrina Cage was charged with one count of conspiracy to possess with intent to distribute methamphetamine and three counts of use of a telephone to facilitate a drug trafficking offense. She pled guilty to the conspiracy charge and to one telephone charge. If Sabrina Cage had been convicted at trial of all charges, her guideline sentencing range would have been 292 to 365 months. Under the plea agreement, the total offense level was 23, the criminal history category was 1, and the guideline imprisonment range was 46 to 57 months. I imposed a sentence of 46 months imprisonment under United States Sentencing Guidelines and an alternative sentence, independent of the guidelines, of 6 days,[3] the time Sabrina Cage had already served in federal custody as of the date of sentencing, and placed Sabrina Cage on

---

[3]On January 10, 2005, two days prior to the issuance by the United States Supreme Court of its opinions in Booker/Fanfan, 125 S.Ct. 738, 2005 WL 50108, Sabrina Cage voluntarily reported to the Bureau of Prisons to begin service of the guideline sentence of 46 months. Consequently, as of February 24, 2005, the date of the hearing, she had served more than 52 days in federal custody.

18

supervised release for a period of 3 years. Sabrina Cage had no criminal history. She graduated from high school and has had sporadic employment beginning at age eighteen. Sabrina Cage began a relationship with Defendant Ricardo Cuevas in 1998. They have a son, age two, who had medical problems requiring corrective surgery when the child was one year old. Ricardo Cuevas, the child's father, was sentenced to 180 months imprisonment. The presentence investigation report reflects that Sabrina Cage has no responsible family members who could properly care for her young son if Sabrina Cage were to be imprisoned for a lengthy period. Prior to her arrest, Sabrina Cage had a problem with substance abuse, but since being on pretrial supervision, she has addressed her substance abuse problem and has regularly tested negative for the use of drugs. After Sabrina Cage no longer was under the influence of Ricardo Cuevas and members of his family, she began making progress towards obtaining gainful employment, continued to care for her young child and conformed well to conditions of release. If Sabrina Cage were required to serve an extended period of confinement, it would result in a significant specific loss of essential caretaking for her young child that substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. There simply appears to be no effective remedial or ameliorative programs reasonably available thereby making Sabrina Cage's maternal care irreplaceable. In imposing the alternative sentence of 6 days time already served, I was also influenced by a suggestion of the Assistant United States Attorney at the sentencing hearing who, while preserving objection, stated that, "Since Ms. Cage did serve some time in jail after her arrest, the Court would also sentence her to time served, plus five years supervised release, or however much

19

supervised release was appropriate." Following the directive of Congress as set forth in 18 U.S.C. § 3553(a), I have determined that the alternative sentence of 6 days imprisonment (as previously noted, Sabrina Cage has already served at least 52 days) and 3 years of supervised release is sufficient, but not greater than necessary, to meet the considerations enumerated in the statute. In regard to the nature and circumstances of Sabrina Cage's offenses, they basically occurred because of the influence of Ricardo Cuevas, the father of her very young child, and were inconsistent with her prior law-abiding conduct. The time Sabrina Cage spent in jail and later spent in prison is sufficient to impress upon her the seriousness and wrongfulness of the type of conduct in which she engaged under Ricardo Cuevas' influence, and to promote her future respect for the law. This sentence affords adequate deterrence to further criminal conduct and will protect the public from further crimes by the Defendant, primarily because Sabrina Cage no longer will be under the influence of Ricardo Cuevas or his family members.

**3 years probation with 6 months community confinement (alternative sentence), Shawna Cuevas.** Defendant Shawna Cuevas was charged with one count of conspiracy to possess with intent to distribute methamphetamine and one count of use of a telephone to facilitate a drug trafficking offense. Shawna Cuevas pled guilty to both charges. If the Defendant had been convicted of the charges at a trial, her sentence would have been 120 months, the statutory mandatory minimum. Under the terms of the plea agreement, the total offense level was 17, the criminal history category was I, and the guideline imprisonment range was 24 to 30 months. I imposed a sentence of 24 months imprisonment under United States Sentencing Guidelines and an alternative sentence,

independent of the guidelines, of 3 years probation with a condition of 6 months community confinement.[4] Shawna Cuevas' story is probably the most tragic of those of the dominated women defendants. Defendant Arturo Cuevas took Shawna Cuevas at the age of fourteen from her home in Farmington, New Mexico to Los Angeles, California. Shawna Cuevas bore four children by Arturo Cuevas, the oldest of whom is now twenty years of age. Despite continuous ongoing criminal conduct by Arturo Cuevas throughout their relationship, Shawna Cuevas had zero criminal history points and no convictions as a juvenile or as an adult. It appears that for many years while her husband continuously engaged in criminal activity, Shawna Cuevas was able to avoid that life and spent her time raising four children. It is clear that Shawna Cuevas' involvement in this case was directly the result of the influence of Arturo Cuevas who dominated her life from the young age of fourteen when he took her from her home in Farmington to Los Angeles, where they lived for many years. During her life with Arturo Cuevas, Shawna Cuevas did abuse alcohol, but attempted, on her own, to address her problem with substance abuse. She voluntarily entered into a treatment program in 1999, but had to leave the program because Arturo Cuevas did not want her to be in treatment. Since her arrest, she has performed well under pretrial supervision and according to the presentence investigation report, "Records reflect the Defendant is in full compliance with the

---

[4]Shawna Cuevas voluntarily surrendered to the Bureau of Prisons on January 11, 2005, the day prior to the issuance by the United States Supreme Court of its opinions in Booker/Fanfan, 125 S.Ct. 738, 2005 WL 50108, to begin service of the guideline sentence of 24 months. As of February 24, 2005, the date of the hearing, she had been in federal custody 44 days.

program requirements, and all of her urine specimens have tested negative for drug and alcohol use. According to the last monthly progress report, the Defendant is making positive changes and progress." The Court was provided information at the time of sentencing that Defendant Arturo Cuevas continues to attempt to manipulate Shawna Cuevas from prison by, among other things, telling their son that Shawna Cuevas was a "snitch" and could not be trusted. Once free of Arturo Cuevas, Shawna Cuevas maintained steady employment and has been caring for her three minor children. An alternative sentence of 3 years probation with 6 months community confinement is appropriate and reasonable in Shawna Cuevas' case for several reasons. First, Shawna Cuevas was able for many years to avoid getting involved in criminal activity even though married to Arturo Cuevas, who with his brothers, was constantly involved in criminal activities. Second, Shawna Cuevas should be available to continue caring for her three minor children, to direct them away from lives of crime, which seems to be their fate if they follow in their father's footsteps. Third, Shawna Cuevas' future adult life is promising in the absence of Arturo Cuevas. Shawna Cuevas' ability to respond well to pretrial supervision reflects her ability to continue to do well in the future without the influence of Arturo Cuevas.

## C. Discussion

The government argued against the application of the alternative sentences to Veronica Cuevas, Sabrina Cage, and Shawna Cuevas on several grounds. First, the government argued that the condition precedent to the application of the alternatives sentences, i.e., the unconstitutionality of the Sentencing Guidelines, did not occur. The government takes the

22

position that the Supreme Court in *Booker/Fanfan* did not hold that the portions of the Sentencing Guidelines applicable to the sentencings of Veronica Cuevas, Sabrina Cage, and Shawna Cuevas were unconstitutional, but only that the mandatory nature of the United States Sentencing Guidelines is unconstitutional. When I sentenced Veronica Cuevas, Sabrina Cage, and Shawna Cuevas, my intent was to impose the alternatives sentences if the United States Supreme Court ruled that the Sentencing Guidelines were no longer mandatory. That is exactly what the United States Supreme Court did in *Booker/Fanfan*. *See United States v. Labastida-Segura*, 396 F.3d 1140, 1142 (10th Cir.1995)(*Booker/Fanfan* "imposed a global remedy for the Sixth Amendment difficulties with the Sentencing Guidelines, invalidating their mandatory application and instead requiring district courts to consult them in an advisory fashion."). Consequently, the condition precedent to my alternative sentences has been satisfied.

Second, the government argued that I no longer had jurisdiction to apply the alternative sentences. The government specifically argued that since Veronica Cuevas, Sabrina Cage, and Shawna Cuevas did not file appeals of their guideline sentences, their only recourse is to file 28 U.S.C. §2255 motions to vacate, set aside or correct the sentences. The purpose of §2255 is determine if a "judgment was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such judgment, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Rule 1 of Rules Governing Section 2255 Proceedings. In this case, Veronica Cuevas, Sabrina Cage, and Shawna Cuevas did not seek to overturn their sentences. They simply wanted to have the previously imposed alternative sentences applied. The alternative sentences were not imposed in violation of the Constitution or laws of the United States, I had jurisdiction to order the

23

alternative sentences, the alternative sentences were not in excess of the maximum authorized by law and the alternative sentences were not otherwise subject to collateral attack. Section 2255 simply is not applicable to this situation.

Third, the government suggested in a footnote that *Booker/Fanfan* does not apply to this case because there were no pending appeals of the Defendants' sentences when the United States Supreme Court decided *Booker/Fanfan* on January 12, 2005. *See Booker/Fanfan* at *29 ("As these dispositions indicate, we must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act--to all cases on direct review."). Although there were no pending appeals in this case at the time *Booker/Fanfan* was decided, the alternative sentences were already in place. The Tenth Circuit approved the use of alternative sentences in the past when the district courts were unsure whether the Sentencing Reform Act of 1984 was constitutional. *See, e.g., United States v. Scott*, 1994 WL 35027 **2 (10th Cir.), *cert. denied*, 513 U.S. 960 (1994). Since the Judgments entered in the cases of Veronica Cuevas, Sabrina Cage, and Shawna Cuevas contained both the guideline sentences and the alternative sentences, "no court action was required for the [alternative sentence] to become operative, and no jurisdictional problem arose." *Id.*

Finally, the government argued that if I wanted the alternative sentences to apply, I needed to make findings on the record of the reasonableness of the alternative sentences. *See Booker/Fanfan* at *25 (the standard of review for federal sentences will be whether the sentences are unreasonable). I now have made those findings of reasonableness, both orally at the February 24, 2005 hearing and in this Memorandum Opinion, by comparing Veronica Cuevas, Sabrina Cage, and Shawna Cuevas and their alternative sentences with the other defendants and their

24

respective sentences, and then by concluding that the alternative, non-guideline sentences

previously imposed on Veronica Cuevas, Sabrina Cage, and Shawna Cuevas are fair, just and

appropriate.  In determining that the alternative sentences should be the sentences served, I

carefully considered the factors enumerated under 18 U.S.C. §3653(a) as I was required to do.

SENIOR UNITED STATES DISTRICT JUDGE

25